# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

No. 17-0481
_____

In Re: J. P., E. P., and S. P.
_____

FILED
February 14, 2018
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Appeal from the Circuit Court of Hancock County
The Honorable Ronald E. Wilson, Judge
Case Nos. 16-JA-49, 50, 51
_____

**AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED**

Submitted: January 24, 2018
Filed: February 14, 2018

Christopher Alan Scheetz, Esq.
Follansbee, West Virginia
Counsel for Petitioner, F. P.
(the father)

James T. Carey, Esq.
Carey Law Office
Weirton, West Virginia
Counsel for J. P.
(the mother)

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent,
Department of Health
and Human Resources

Cathryn A. Nogay, Esq.
Weirton, West Virginia
Guardian *ad litem* for
J. P., E. P., and S. P.

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous." Syl. pt. 1, *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

2. "In cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child." Syl. pt. 6, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013).

**Justice Ketchum**:

This abuse and neglect proceeding from the Circuit Court of Hancock County concerns three children, J. P., E. P. and S. P., and their biological parents, F. P. ("the father") and J. P. ("the mother").[1]  The father appeals from the December 14, 2016, adjudicatory order which found him to be an abusing and neglectful parent.  He also appeals from the April 25, 2017, order which adopted the parenting plan recommended by the children's guardian *ad litem*.

This Court has before it the father's petition for appeal, the response of the Department of Health and Human Resources (the "DHHR"), the response of the guardian *ad litem*, and the record of proceedings below.  In addition, the parties have filed updates on the status of the children as required in abuse and neglect appeals under Rule 11(j) of the West Virginia Rules of Appellate Procedure.

---

[1] This Court entered an order on May 30, 2017, which states that, pursuant to W.Va. R. App. P. 40(e), this proceeding is confidential and that full initials or descriptive terms such as "mother" or "father" shall be used.  Rule 40(e) restricts the use of personal identifiers as well as birth dates in abuse and neglect cases.

J. P., E. P. and S. P. were born prior to 2012.  Their respective circuit court case numbers are 16-JA-49, 50, and 51.  Case number 16-JA-48, not included in the current appeal, was assigned to a fourth child, M. C., born in 2003.  M. C. is the biological daughter of the mother and another individual, M. M.  M. C. currently lives with M. M. in Salem, Ohio.

This Court affirms the December 14, 2016, adjudicatory order which found the father to be an abusing and neglectful parent. However, in view of the Rule 11(j) updates, we conclude that the circumstances regarding the children have changed to the extent that the parenting plan is no longer viable in the absence of additional findings by the circuit court. We therefore set aside the April 25, 2017, order which adopted the parenting plan recommended by the guardian *ad litem* and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

In April 2016, the DHHR's Child Protective Services Division filed an abuse and neglect petition in the Circuit Court of Hancock County against the father and the mother (husband and wife) regarding their three children: J. P., E. P. and S. P.[2] Also included in the DHHR petition was a fourth child, M. C., the biological daughter of the mother and the father's stepdaughter. The father and the mother were separated at the time the petition was filed. However, some of the allegations occurred while the father and the mother were living together with the four children. The DHHR petition alleged that the father and mother "have a history with child protective services dating back to 2007."

---

[2] *See W.Va. Code*, 49-4-601 [2015], *et seq.*, which establishes procedures in cases of child abuse and neglect. *See also* the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.

The allegations against the mother concerned illegal drug trafficking and drug addiction in the presence of the children. According to the petition, the mother engaged in the buying and selling of cocaine, leading to her arrest and charges of conspiracy and child neglect creating a risk of injury. A search of her residence and vehicle revealed drug paraphernalia, including needles within the reach of the children.

The allegations against the father concerned domestic violence. The DHHR petition alleged that on October 5, 2015, the father attacked the mother, injured her wrist, and fled the scene with two of the children. The incident resulted in the father's convictions and incarceration for domestic violence and obstructing official business. In January 2016, the mother was granted a domestic violence protection order against the father. The order provided protection for the four children as well as the mother.

Finally, the DHHR petition stated that, pursuant to an emergency order, J. P., E. P. and S. P. were placed in foster care in Parkersburg, West Virginia, and that M. C. was in a kinship placement in Newell, West Virginia. The DHHR sought temporary legal and physical custody of the children pending further proceedings. Soon after the petition was filed, the guardian *ad litem* was appointed for the children, and the father and mother received separate appointed counsel.

4

Following a status review in June 2016, the circuit court entered an order requiring the father to comply with a pre-adjudicatory improvement plan. The issue of whether the father was an abusing and neglectful parent remained pending.

The mother admitted her drug addiction and her resulting inability to safely and appropriately parent the children. As a result, the mother waived her right to an adjudicatory hearing. The circuit court found her to be an abusing and neglectful parent and required her to comply with a post-adjudicatory improvement plan.[3] The circuit court noted that the father and the mother were still married but intended to obtain a divorce. Although J. P., E. P. and S. P. remained in foster care in Parkersburg, West Virginia, the circuit court transferred placement of M. C. to her biological father, M. M., in Salem, Ohio.[4]

In October 2016, the circuit court granted the guardian *ad litem's* motion to terminate the father's pre-adjudicatory improvement period, with the grounds for the motion to be included in an amended petition to be filed by the DHHR. The circuit court also scheduled the father's adjudicatory hearing.

---

[3] In November 2016, the circuit court received a report that the mother had been compliant with her post-adjudicatory improvement plan, that her drug tests had been clean, and that her visits with the children had gone well.

[4] No custodial or visitation rights regarding M. C. have been sought by the petitioner-father in the current appeal, and the guardian *ad litem* indicates that M. C. has not expressed a desire to visit with him. Visitation has occurred on a regular basis, however, between M. C. and her mother and three half-siblings.

On October 26, 2016, the DHHR filed an amended abuse and neglect petition in the circuit court, alleging, *inter alia*, that the father missed opportunities to visit with his children, that his home was not safe and suitable for them, and that he had not been forthcoming about various individuals residing in his home.[5]

The father's adjudicatory hearing began in November 2016. On December 14, 2016, the circuit court entered an order determining the father to be an abusing and neglectful parent

---

[5] The DHHR's amended abuse and neglect petition included the following allegations against the father:

> That [the father] did not comply with the Pre-Adjudicatory Plan of Improvement granted to him on June 13, 2016. He refused to participate in parenting education and life skills with . . . [the] Home Base caseworker, and he missed supervised visits with his children. He did not provide a home that was safe and suitable for his children. He was not forthcoming about the individuals who have been residing in his home and did not provide information about them so that background checks could be done. He has been rude, threatening and intimidating to workers assigned to his case;  *  *  *

> That [the father] previously sought treatment for alcohol abuse in Columbiana County and, according to an August 2016 report from the Counseling Center of Columbiana County, claimed to be committed to long-term sobriety. Nevertheless, there was an open case of beer on the porch at his home and empty beer cans in the yard and in the garbage. [The father's] abuse of alcohol impairs his ability to safely and effectively parent his children and has a negative effect on his ability to control his anger and emotions around his children;

> That [the father] has allowed multiple people to reside in his home, while seeking the return of the children to that home, including a woman who is currently the subject of an open CPS case.

and that J. P., E. P., S. P. and M. C., are abused and neglected children. Among the circuit court's findings were the following:

> (1) in October 2015, the mother, the father and the four children resided in East Liverpool, Ohio;
> (2) at that time, the father was M. C.'s custodian;
> (3) on October 5, 2015, the father committed domestic violence against the mother in the presence of M. C.;
> (4) based on the October 5, 2015, incident, the father was charged with domestic violence and obstructing official business;
> (5) in January 2016, the mother obtained a domestic violence protection order against the father which also covered the four children;
> (6) sometime after the October 5, 2015, incident, the mother and the four children moved to Hancock County, West Virginia; and
> (7) the father "has a history of domestic violence and involvement with child protective services in several states, including Ohio, West Virginia, and Florida."

The circuit court granted the father a post-adjudicatory improvement period. *See W.Va. Code*, 49-4-610(2) [2015] (authorizing a post-adjudicatory improvement period after a finding that a child has been abused or neglected). The circuit court returned physical custody of J. P., E. P. and S. P. to the mother on a trial basis because of her compliance with services and her improvement throughout the case.

On April 25, 2017, the circuit court entered an order dismissing the DHHR's amended petition against the father and the mother and returning J. P., E. P. and S. P. to the mother and the father's legal custody. The circuit court noted that the mother remained compliant with her post-adjudicatory improvement plan but that the father's compliance with his plan had

7

been inconsistent, even though his visits with J. P., E. P. and S. P. had gone well.  In the order, the circuit court adopted the following parenting plan recommended by the guardian *ad litem*:

> [The mother] will be the primary residential parent, caretaker and legal custodian, as well as decision maker, for [J. P., E. P. and S. P.].
>
> [The mother] will have the children in her care at all times when [the father] does not have the children. [The father] may have liberal weekend parenting time, and one weekday visit, per week, from 5:00 to 7:00, as long as the weekday visits do not interfere with schoolwork or extra-curricular activities.  "Liberal weekend parenting time" means at least two weekends a month, but not more than three weekends a month.
>
> [The mother and the father] will alternate major holidays each year, and each parent will be allowed a seven day uninterrupted time period for vacation.
>
> [The mother and the father] must prioritize the needs and feelings of their mutual children. [The mother and the father] must work together to successfully parent their children, and to cooperate with one another.  The parents must treat each other with consideration and respect, and NEVER speak negatively about the other in the presence of the children.
>
> [The mother and the father] may not use controlled substances or alcohol while parenting their children.
>
> If either [the mother or the father] decide to relocate from Chester, West Virginia, they must comply with the provisions of West Virginia Code Section 48-9-403, relating to "Relocation of a parent."

The April 25, 2017, order directed the father to make child support payments pursuant to calculations to be made by the Bureau of Child Support Enforcement.

The father appeals from the December 14, 2016, adjudicatory order which found him to be an abusing and neglectful parent regarding J. P., E. P. and S. P., and from the parenting plan set forth in the April 25, 2017, order.

8

## II. Standard of Review

Our standards of review in these cases are well settled and have been consistently applied in conjunction with efforts at all levels to facilitate the stability, development and security of a child at risk. Syllabus point1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), states in part:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous.

*Accord* syl. pt. 1, *In re C. M.*, 236 W.Va. 576, 782 S.E.2d 763 (2016); syl. pt. 1, *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000). This Court emphasized in syllabus point 3 of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), that, although parents have substantial rights that must be protected, "the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." *Accord* syl. pt. 2, *In re: D. M.*, 237 W.Va. 713, 790 S.E.2d 933 (2016).

### III. Discussion

### A. The Adjudicatory Order

The father asserts that the DHHR failed to present clear and convincing evidence of abuse and neglect regarding his conduct toward the children, and, therefore, the December 14, 2016, adjudicatory order must be reversed. *See W.Va. Code*, 49-4-601(i) [2015] (In adjudicating a child to be abused and neglected by a parent, the evidence must be clear and convincing.). The father's assertion is twofold: The domestic violence incident of October 5, 2015, (which the father also denies took place) did not occur in the presence of his stepchild, M. C. Or, if it did occur in M. C.'s presence, that one incident, which was not seen by the father's three biological children, was insufficient to adjudicate him an abusing and neglectful parent.

The terms "abusing parent" and "abused child" are defined in *W.Va. Code*, 49-1-201 [2015]. An "abusing parent" is simply a parent, guardian or other custodian whose conduct has been adjudicated to constitute child abuse or neglect. The term "abused child" is defined, in relevant part, as a child whose health and welfare is being harmed or threatened by:

> (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment; [or]
> * * *

10

(D) Domestic violence as defined in section two hundred two, article twenty-seven, chapter forty-eight of this code.[6]

Pursuant to *W.Va. Code*, 48-27-202 [2010], referenced above, "domestic violence" encompasses various occurrences, including one or more of the following acts between "family or household members": (1) attempting to cause or intentionally, knowingly or recklessly causing physical harm to another, (2) placing another in reasonable apprehension of physical harm, and (3) creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts. The phrase "family or household members" is defined in *W.Va. Code*, 48-27-204 [2002], as including persons who have a child in common or who have a relationship to a stepchild.

M. C. is the father's stepdaughter, and at the time of the October 5, 2015, incident she was a household member along with her half-siblings, J. P., E. P. and S. P. The father's relationship to M. C. was that of a "parent, guardian or custodian." The father denied

---

[6] The term "neglected child" is defined in *W.Va. Code*, 49-1-201 [2015], in part, as a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

Later amendments to *W.Va. Code*, 49-1-201 [2015], do not pertain to this proceeding.

11

committing, or threatening to commit, domestic violence against the mother or the four children on any occasion. He presented testimony at the adjudicatory hearing that the mother had a reputation in the community for being untruthful. The father testified that the October 5, 2015, incident was nothing more than an argument which began when he accused the mother of allowing a registered sex offender to enter the house.[7] According to the father, neither M. C. nor the other children witnessed the October 5, 2015, argument.

The mother, however, testified that the father attacked her on October 5, 2015, hurt her wrist, and was choking her when M. C., age eleven, entered the house and saw what was occurring. M. C. ran for help, and the father picked up J. P. and E. P., ages five and three respectively, and fled the scene. Although the two children were returned that day, the police were called and the father was arrested. According to the mother, in addition to M. C. witnessing the attack, J. P., E. P. and S. P. heard the altercation between the father and the mother and "definitely knew something was going on." The mother testified that M. C. reacted to the incident with fear and crying. M. C. was calmed down by the police.

The mother also testified that the father committed prior acts of domestic violence against her, each of which were observed by the children. The mother described one prior instance where the father picked her up by the throat and slammed her on a couch on top of

---

[7] No evidence verifying the visitor as a registered sex offender was offered during the adjudicatory hearing.

J.P. who was sleeping at the time. The mother also testified that the father had a problem with alcohol and had been intoxicated in front of the children from time to time.

As an alternative to eliciting M. C.'s testimony in open court, M. C.'s statement was taken in the presence of the guardian *ad litem* and the father's attorney and presented to the circuit court in the form of a narrative report. M. C.'s account of the October 5, 2015, incident was largely consistent with the testimony of the mother. According to the narrative report, M. C. saw the father jump over a table and push the mother. M. C. ran out of the house to get help, came back into the house, and saw the father holding the mother against the wall and choking the mother. M. C. stated that, although the other three children did not witness the "physical fighting," the father came out of the house, grabbed J. P. and E. P., and left the scene with them.

During the adjudicatory hearing, the father acknowledged that he has two domestic violence convictions in Florida. He indicated that those convictions were many years ago and did not involve the mother and the four children herein.

In *In re Lilith H.*, 231 W.Va. 170, 744 S.E.2d 280 (2013), the parents of three children engaged in a physical altercation outside their home with the children's maternal grandfather. During the altercation, the children, ages five, seven and eight, came out of the house and observed the fight. The police arrived, and the parents and the maternal grandfather were

charged with domestic battery. The circuit court adjudicated the parents abusive and neglectful parents based on domestic violence having occurred in front of the children.

Although critical of the parties' behavior, this Court reversed the adjudication of abuse and neglect in *Lilith H.* because the evidence demonstrated that the altercation was an "unexpected and isolated" event. Moreover, we noted that the maternal grandfather did not reside in the home with the parents and the children. The *Lilith H.* opinion concludes: "We simply cannot agree, under these particular circumstances, that the [parents] created an environment of abuse and/or neglect which threatened their children's health or welfare sufficient to justify their adjudication as abusive and/or neglectful." 231 W.Va. at 179, 744 S.E.2d at 289.

Unlike the situation in *Lilith H.*, the father's adverse conduct in relation to J. P., E. P., S. P. and M. C. cannot be described as an unexpected and isolated event. In the December 14, 2016, order, the circuit court found that the father "has a history of domestic violence and involvement with child protective services in several states, including Ohio, West Virginia, and Florida." The father acknowledged two convictions of domestic violence in Florida. More currently, the mother testified that the father committed various acts of domestic violence in front of the children. She testified that the father once slammed her on a couch on top of J. P. who was sleeping.

The circuit court found that on October 5, 2015, the father committed domestic violence against the mother in the presence of M. C. The attack resulted in charges of domestic violence and obstructing official business and the subsequent entry of a protection order covering the mother and the children. The circuit court's finding is supported by the mother's testimony, and the narrative report, that M. C. saw the father attacking the mother and choking her. The mother further testified that the father then exited the house, picked up J. P. and E. P., and fled the scene.

The father's exit from the house is significant. The DHHR aptly points out that the father's action in taking J. P. and E. P. from the home, when he was admittedly angry and arguably fleeing the house after committing domestic violence, directly affected those children, as well as M. C. *See* M. L. McCoy, S. M. Keen, *Child Abuse and Neglect*, p. 103 (2nd ed. 2014) (Even if a child is not harmed physically, psychological harm may occur by witnessing domestic violence or by knowing it is happening in the home.).[8]

---

[8] As observed in E. S. Buzawa, C. G. Buzawa, E Stark, *Responding to Domestic Violence*, p. 402 (4th ed. 2012):

> Children who witness domestic violence exhibit more aggressive and antisocial behaviors (externalized behaviors) as well as fearful and inhibited behaviors (internalized behaviors) when compared with nonexposed children. Exposed children also show lower social competence than other children and show higher than average anxiety, depression, trauma symptoms, and temperament problems than children who were not exposed to violence at home. (internal references omitted)

15

This Court concludes that the adjudicatory order is supported by clear and convincing evidence that the father was an abusing and neglectful parent in relation to the children. The level of domestic violence witnessed by the children over time distinguishes this case from *Lilith H.* Each of the children herein constitutes an "abused child" within the definition set forth in *W.Va. Code*, 49-1-201 [2015].[9] We affirm the December 14, 2016, adjudicatory order.

## B. The Parenting Plan

In the April 25, 2017, order, the circuit court dismissed the DHHR's amended petition against the father and the mother and returned J. P., E. P. and S. P. to the mother and father's legal custody. In the order, the circuit court adopted the parenting plan recommended by the guardian *ad litem*.[10]

---

[9] Although referring to physical and sexual abuse, we note syllabus point 2 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), for the principle that another child residing in the home when abuse takes place, who is not a direct victim but is at risk of being abused, is an abused child under the statutory definition, currently *W.Va. Code*, 49-1-201.

[10] At the hearing conducted prior to the entry of the order, the circuit court stated that the dismissal was subject to the DHHR's continued involvement and "responsibility of checking on the children." Moreover, Rule 6 of the Rules of Procedure for Child Abuse and Neglect Proceedings states, in part:

Each child abuse and neglect proceeding shall be maintained on the circuit court's docket until permanent placement of the child has been achieved. The court retains exclusive jurisdiction over placement of the child while the case is pending, as well as over any subsequent requests for modification, including, but not limited to, changes in permanent placement or visitation, except that . . . *if the petition is dismissed, and the child is thereby ordered placed in the legal and physical custody of both of his/her*

16

Under the parenting plan, the mother was designated J. P., E. P. and S. P.'s residential parent and caretaker, and the father was allowed limited weekend and weekday visitation. The mother and father were to alternate holiday visitations, and each was granted specified vacation time with the children. The parenting plan directed the mother and father to treat each other with consideration and respect, and they were to work together to parent the children. The plan further provided: "If either [the mother or the father] decide to relocate from Chester, West Virginia, they must comply with the provisions of West Virginia Code Section 48-9-403, relating to 'Relocation of a parent.'"

The father contends that the parenting plan is unfair because his allotted time with the children should have been determined on an equal basis with that of the mother. He asserts, in the alternative, that he was the primary caretaker of the children and, therefore, should have been granted proportionally more time with them. The guardian *ad litem* states, however, that the father never took responsibility for his actions and, in any event, never requested an evidentiary hearing concerning the recommended parenting plan adopted by the circuit court.

---

*cohabitating parents without any visitation or child support provisions*, then any future child custody, visitation, and/or child support proceedings between the parents may be brought in family court.

(emphasis added)

The exception in Rule 6 to retained circuit court jurisdiction in abuse and neglect cases did not divest the circuit court of authority in the current proceeding to adopt the recommended parenting plan. Here, the father and the mother are not cohabitating, and visitation and child support were established.

17

Nevertheless, the Rule 11(j) updates filed by the DHHR, the guardian *ad litem* and the father suggest that the circumstances regarding J. P., E. P. and S. P. have substantially changed since the April 25, 2017, order. According to the updates, both parents have moved from their respective homes in Chester, West Virginia, thus raising transportation issues regarding parenting time with the children. The father moved to Wellsville, Ohio, and the mother moved to Wheeling, West Virginia. No determination can be made from the record before us whether either parent complied with the statutory provisions relating to relocation of a parent.

The updates further suggest that the father has been notably hostile and abusive toward the mother and the guardian *ad litem* through numerous vulgar and obscene voicemails and text messages. In one message, the father threatened to "leave the [expletive deleted] state" with the three children. The guardian *ad litem* contends that the father's visitation rights with the children should be suspended pending further review. Finally, the updates indicate that the mother and the children are residing in Wheeling with a man alleged to be a recovering addict with an extensive criminal record and a history of child protective services investigations.

In view of the Rule 11(j) updates, it is doubtful that the parenting plan set forth in the April 25, 2017, order remains viable. Under these circumstances, additional findings by the

18

circuit court are warranted. In syllabus point 6 of *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013), we said:

> In cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child.

*Accord In re Lilith H.*, 231 W.Va. at 182, 744 S.E.2d at 292.

## IV. Conclusion

This Court affirms the December 14, 2016, adjudicatory order which found the father to be an abusing and neglectful parent. However, we set aside the April 25, 2017, order which adopted the parenting plan recommended by the guardian *ad litem* and remand this case to the Circuit Court of Hancock County for further proceedings consistent with this opinion.[11]

**Affirmed, in part, Reversed, in part, and Remanded**.

---

[11] The allegations in the Rule 11(j) updates raise serious concerns with respect to the status of the children. We, therefore, remand this case to the circuit court for findings of fact and conclusions of law regarding those allegations and any other matters affecting the children's best interests.