# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.W.**

**No. 20-0070** (Wood County 19-JA-103)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.W., by counsel Nancy L. McGhee, appeals the Circuit Court of Wood County's January 3, 2020, order terminating his parental rights to L.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew E. DeVore, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him upon allegations contained in the amended petition, denying his motion for an improvement period, and failing to allow him to voluntarily relinquish his parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner forcefully grabbed then two-week-old L.W. from the mother's arms during the mother's attempt to escape domestic violence. Specifically, the mother told the DHHR worker that petitioner had "been up on meth for 3 days" when he grabbed L.W. and appeared like he would drop the child. The worker observed a red mark on the child's neck and noted that it may be a bruise.[3] Another

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not challenge the termination of his parental rights.

[3]The mark was later determined to be a birthmark, not a bruise.

1

witness also stated to the DHHR worker that she observed petitioner inappropriately holding the infant "by the neck" and that she attempted to intervene during several instances of domestic violence. Further, a detective reported watching petitioner improperly hold L.W. while wildly waving his arms during an altercation. Finally, the DHHR alleged that the parents regularly abused controlled substances, which impaired their ability to parent L.W.

The following month, the circuit court held an adjudicatory hearing during which petitioner stipulated to the substance abuse allegations contained in the petition and the circuit court adjudicated him as an abusing parent. The circuit court also granted petitioner a post-adjudicatory improvement period, the terms of which included submitting to random drug screening, attending parenting and adult life skills classes, participating in individualized therapy sessions, completing a substance abuse evaluation, and attending supervised visitations. Most importantly, petitioner's case plan required that he keep his home free of domestic violence. By the end of June of 2019, petitioner tested positive for tetrahydrocannabinol ("THC"). In early August of 2019, petitioner again tested positive for THC and failed to submit to drug screens thereafter.

The DHHR filed an amended petition in August of 2019, alleging that petitioner pointed a loaded gun at the mother's head and threatened to kill her. The DHHR further alleged that when the mother struggled to get away the firearm discharged, and she later obtained a domestic violence protective order against petitioner. Also, during separate incidents of domestic violence, the DHHR alleged that petitioner sexually assaulted the mother with a broken broom stick, burned her with cigarettes, punched her, and destroyed her personal items. The DHHR worker confirmed that the mother had a cigarette burn on her neck and an officer observed various bruises on the mother's elbow and knee. The parents engaged in domestic violence outside of the visitation center during a scheduled supervised visit with the child in September of 2019. That same month, the multidisciplinary team members agreed to suspend petitioner's supervised visitations due to his repeated acts of domestic violence.

In October of 2019, the circuit court held an adjudicatory hearing upon the amended petition. Petitioner requested that the circuit court allow him to voluntarily relinquish his parental rights to L.W. The DHHR and the guardian objected, arguing that the young parents were likely to have future children who could be abused and that the burden should be placed upon the parents to show a change of circumstances. The guardian further argued that the egregious allegations in this case warranted the involuntary termination of petitioner's parental rights. Having heard the arguments, the circuit court denied petitioner's request and proceeded with the adjudicatory hearing. The mother then testified that when petitioner attacked her with the broken broom handle, she suffered from a wound that required ten stiches. She stated that she sought medical treatment at least three times since July of 2019 due to petitioner's continuous acts of domestic violence, which included cigarette burns, stalking, and threats to her life. She additionally testified that the gun discharged into the ceiling during the incident where petitioner threatened to kill her. Most importantly, the mother testified that prior to L.W.'s removal, petitioner forcefully grabbed L.W. from her during a domestic violence incident. She described petitioner as upset, angry, yelling, and carelessly holding L.W. The mother was concerned that petitioner "would drop her or break her neck." The mother also explained that the police were contacted during this incident and that she left the home that night but later returned with the baby. Ultimately, the circuit court found that petitioner's acts of domestic abuse had increased since the child's removal and terminated

petitioner's improvement period. The circuit court adjudicated petitioner as an abusing parent based upon the new allegations and set the matter for disposition.

The circuit court held a final dispositional hearing in December of 2019. Petitioner testified that he was employed, had housing, and was able to participate in an improvement period. He explained that the mother was accidentally cut by the broom handle when he threw it across the room and denied claims of punching the mother. However, petitioner admitted to the incident involving the firearm but minimized his role as a domestic abuser. The mother also testified, and contrary to her prior testimony, stated that the incidents of domestic violence were accidents and blamed her own mother for the DHHR's involvement with the child. Finally, the DHHR presented evidence that petitioner had failed to attend his substance abuse evaluation, sign releases regarding his therapy sessions, and avoid THC and alcohol during his improvement period. Ultimately, the circuit court found that petitioner's acts of domestic violence had only increased in prevalence and severity since the child had been removed from his care and that he had done nothing to address his substance abuse. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on January 3, 2020. It is from this dispositional order that he now appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating him as an abusing parent based upon the allegations contained in the amended petition. According to petitioner, because the child was not in his custody during the instances of domestic abuse with

---

[4]The mother's parental rights were also terminated below. According to the DHHR, the permanency plan for the child is adoption by her maternal grandmother.

the mother, there was no abuse that occurred to the child and, therefore, there was insufficient evidence to adjudicate him as an abusing parent. We disagree.[5]

We have previously required as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Pursuant to West Virginia Code § 49-1-201, an "abused child" is one whose health or welfare is being harmed or threatened by "[d]omestic violence as defined in § 48-27-202 of this code."

Here, petitioner concedes that he perpetrated acts of domestic abuse upon the mother *after* the removal of the child but argues that there was no evidence that the child witnessed any of the abuse or was a victim of the abuse herself. However, the record reveals otherwise. The mother testified that petitioner forcefully grabbed the two-week-old infant during an altercation of domestic abuse *prior* to the child's removal and that she was concerned he would seriously injure the child. Additionally, two other witnesses reported to the DHHR worker seeing petitioner improperly hold L.W. while wildly waving his arms during alternations. Further, as indicated above, the amended petition alleged that petitioner's egregious acts of domestic violence had only increased in severity since the child's removal, making reunification with the child impossible. Clearly, the child would be placed in extreme danger if returned to petitioner's care as evidenced by the discharging of a firearm, threats to kill himself and the mother, and repeated physical violence perpetrated upon the mother. Notably, petitioner failed to testify at the adjudicatory hearing to rebut these allegations of continued domestic violence, and, on appeal, fails to appreciate the fact that the child would have been in danger had the DHHR not removed the child from his care. As there was clear and convincing evidence that petitioner's acts of domestic violence occurred while the child was in his custody as well as after the child was removed, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Petitioner next argues that the circuit court erred in denying him an improvement period "on the amended petition." Petitioner argues that he complied with the terms of his post-

---

[5]Petitioner attempts to distinguish the facts of this case from those of *In re J.P.*, 240 W. Va. 266, 810 S.E.2d 268 (2018), by arguing that no instances of domestic violence occurred in the presence of the subject child. However, as will be discussed further, there was evidence presented that the child was present during at least one instance of domestic violence prior to her removal by the DHHR. Therefore, petitioner's reliance upon *In re J.P.* is misplaced and will not be considered here.

adjudicatory improvement period prior to the amended petition's filing by submitting to drug screens, attending therapy sessions, taking prescribed medications, and attending supervised visitations. Petitioner contends that he would have continued to comply with his improvement period had his services not been stopped. According to petitioner, his acknowledgment of his domestic abuse, coupled with his realization that the outcome of the dispositional hearing would determine whether he retained his parental rights to his daughter, constituted a material change in circumstances warranting the granting of a post-dispositional improvement period.[6] Upon our review, we find that petitioner is entitled to no relief in this regard.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Lastly, West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-dispositional improvement period. Because petitioner was already granted a post-adjudicatory improvement period during the proceedings, he was required to demonstrate (1) a substantial change in circumstances and (2) that he was likely to fully participate in an improvement period. Considering that the circuit court terminated petitioner's post-adjudicatory improvement period due to his continued acts of domestic violence against the mother and failure to comply with its other terms, such as submitting to random drug screening, petitioner cannot establish that he complied with his post-adjudicatory improvement period. Further, the change in circumstances petitioner alleges to have occurred was his realization that his parental rights could be terminated at the dispositional hearing. Contrary to petitioner's contention on appeal that he admitted that he was a domestic abuser below, the transcript of the dispositional hearing reveals that petitioner explained away the incidents with the broom stick handle and the gun, and never fully acknowledged his role as a domestic abuser or acknowledged how his domestic abuse

---

[6]It is unclear whether petitioner argues that the circuit court erred in denying him a second post-adjudicatory improvement period. However, at the adjudicatory hearing upon the amended petition, the circuit court terminated petitioner's existing post-adjudicatory improvement period and, pursuant to West Virginia Code§ 49-4-610(3)(D), petitioner was only eligible for a post-dispositional improvement period. Accordingly, we only address the circuit court's denial of petitioner's request for a post-dispositional improvement period.

affected L.W. In fact, when questioned about his role as a domestic abuser, he only admitted that he injured the mother in one instance but answered "that's [n]ot who I am as a person." We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Finally, the circuit court, having heard all of the evidence throughout the proceedings, found that petitioner's testimony regarding his alleged change of heart lacked credibility. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we find no error in the circuit court's denial of his motion for a post-dispositional improvement period.

Petitioner's final assignment of error alleges that the circuit court erred in failing to accept or properly consider his request to voluntarily relinquish his parental rights. According to petitioner, the circuit court summarily denied his request without giving any "specific reasons for its decision." We find no merit in petitioner's argument.

> A circuit court has discretion in an abuse and neglect proceeding to accept a proffered voluntary termination of parental rights, or to reject it and proceed to a decision on involuntary termination. Such discretion must be exercised after an independent review of all relevant factors, and the court is not obliged to adopt any position advocated by the Department of Health and Human Resources.

Syl. Pt. 4, *In re James G.*, 211 W. Va. 339, 566 S.E.2d 226 (2002). Clearly, the circuit court had full discretion to reject petitioner's request to voluntarily relinquish his parental rights and petitioner cites no authority requiring the circuit court to make specific findings regarding its decision. Regardless, the record reveals that the circuit court heard the arguments of the DHHR, the guardian, and petitioner when considering whether to accept petitioner's voluntarily relinquishment. Petitioner points to no evidence that the circuit court abused its discretion in any way. As such, we find petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 3, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6